UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/4/2020___

YANIRIS CAPELLAN and
LF FOOD MARKET CORP.,

                Plaintiffs,

     -against-

UNITED STATES OF AMERICA and SONNY
PERDUE, SECRETARY, UNITED STATES
DEPARTMENT OF AGRICULTURE,

                Defendants.

17 Civ. 9342 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

Plaintiff Yaniris Capellan is the sole owner of Plaintiff LF Food Market Corp., which operates a bodega, LF Food Market, in the Bronx. 56.1 Stmt. ¶ 4, ECF No. 51. In 2017, the United States Department of Agriculture initiated proceedings to disqualify Plaintiffs from participating in the Supplemental Nutrition Assistance Program ("SNAP"), on the ground that Plaintiffs were engaged in "trafficking" of SNAP benefits—exchanging them for cash or consideration other than eligible food—at LF Food Market. *Id.* ¶ 6. Those proceedings resulted in Plaintiffs' permanent disqualification from the program. *Id.* ¶ 31. Plaintiffs then filed this action under 7 U.S.C. § 2023, which permits parties aggrieved by disqualification determinations to "obtain judicial review thereof by filing a complaint against the United States in the United States court for the district in which it resides or is engaged in business." 7 U.S.C. § 2023(a)(13); Compl., ECF No. 10. On May 24, 2019, Defendants—the United States, the Secretary of Agriculture, and the Department of Agriculture—moved for summary judgment on all of Plaintiffs' claims. ECF No. 48. For the reasons stated below, Defendants' motion is GRANTED.

# BACKGROUND[1]

Plaintiffs own and operate LF Food Market, which opened in late 2015. 56.1 Stmt. ¶ 4. On December 8, 2015, Capellan applied for LF Food Market to participate in SNAP and obtained authorization to participate in SNAP on March 26, 2016. *Id.* ¶ 5.

On July 11, 2017, the Food and Nutrition Service ("FNS"), the agency within the Department of Agriculture responsible for policing violations of SNAP's rules, sent a letter (the "Charge Letter") to Plaintiffs charging LF Food Market Corp. with "trafficking" in SNAP benefits. *Id.* ¶ 6; *see* 7 C.F.R. § 271.2 ("Trafficking means . . . [t]he buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone."). The Charge Letter stated that FNS had "compiled evidence that your firm has violated the [SNAP] regulations," because "[a]nalysis of the records reveal Electronic Benefit Transfer (EBT) transactions that establish clear and repetitive patterns of unusual, irregular, and inexplicable activity for your type of firm." A.R. 125.[2] The letter listed three categories of suspicious transactions between December 2016 and May 2017:

> 1. In a series of [SNAP] EBT transactions, there were an unusual number of transactions ending in a same cents value. . . .
> 2. In a series of [SNAP] EBT transactions, multiple transactions were made from individual benefit accounts in unusually short time frames. . . .
> 3. In a series of [SNAP] EBT transactions, excessively large purchase transactions were made from recipient accounts. . . .

---

[1] The following facts are drawn from the parties' pleadings and submissions, including the complaint, and the Rule 56.1 statement of undisputed fact and the response thereto. Facts in dispute are so noted. Citations to a paragraph in Defendants' Rule 56.1 Statement also include Plaintiffs' response.

[2] Defendants filed a copy of the administrative record ("A.R.") at ECF No. 53, spread across 19 attachments in order to reduce the file size. *See* ECF Nos. 53-1–53-19. Because the A.R. is continuously paginated, references to the administrative record will cite pages in the A.R. rather than to particular ECF filings, for ease of reference.

*Id.*

A series of attached records documented those transactions. *Id.* at 127–151. FNS identified 1,006 transactions in the category of "unusual number of transactions ending in same cents value." 56.1 Stmt. ¶ 10. Out of 1,862 SNAP transactions of $9.00 or more, 689 of them ended in zero cents, and 317 ended in 50 cents. *Id.* ¶ 11. In the category of "multiple transactions . . . in unusually short time frames," FNS identified 14 different SNAP-using households that made multiple transactions totaling more than $100 at LF Food Market within 24 hours. *Id.* ¶ 13. And in the category of "excessively large purchase transactions," FNS identified 123 transactions in an amount equal to or higher than $35.00. *Id.* ¶¶ 15–16.

The Charge Letter instructed Plaintiffs to respond within ten days with "any information, explanation, or evidence you have regarding these charges." A.R. 126. Plaintiffs did not respond within that period. 56.1 Stmt. ¶ 28. On July 28, 2017, FNS sent a letter (the "Disqualification Letter") to Plaintiffs stating that it had found that the transactions identified as suspicious were violations of SNAP rules, and that Plaintiffs were, therefore, disqualified from participation in SNAP. A.R. 158. The Disqualification Letter also stated that because Plaintiffs had submitted evidence that LF Food Market had an effective policy and plan for compliance with SNAP regulations, it was ineligible to pay a civil monetary penalty in lieu of disqualification. *Id.*; *see* 7 C.F.R. § 278.6(i) ("FNS may impose a civil money penalty in lieu of a permanent disqualification for trafficking . . . if the firm timely submits to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations.")

In a letter dated August 10, 2017, Plaintiffs requested review of the decision in the Disqualification Letter. 56.1 Stmt. ¶ 30; A.R. 163–64. On September 18, 2020, Plaintiffs

submitted evidence in support of their request for a review, including letters of support from customers, a demographic survey of the area, financial records, and ledgers showing that the store had permitted some customers to pay on credit. 56.1 Stmt. ¶ 30; A.R. 167–249.

On November 1, 2017, FNS provided its final decision (the "Final Agency Decision") to Plaintiffs. 56.1 Stmt. ¶ 31; A.R. 254–265. The Final Agency Decision affirmed the determination that LF Food Market had engaged in trafficking, and that disqualification of Plaintiffs from SNAP was the appropriate remedy. 56.1 Stmt. ¶ 31; A.R. 264.

## DISCUSSION

I.    <u>Sovereign Immunity</u>

Defendants argue that the Court lacks subject-matter jurisdiction over the claims against the Secretary of Agriculture and the Department of Agriculture, because Congress has not waived sovereign immunity with respect to claims brought against those entities. Def. Mem. 1 n.1. "It is . . . axiomatic under the principle of sovereign immunity that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (internal quotation marks and citation omitted). The United States has waived its own sovereign immunity with respect to claims seeking the judicial review of the type of final agency determination at issue here, *see* 7 U.S.C. § 2023(a)(13), 7 C.F.R. § 279.7, but it has not waived its sovereign immunity with respect to claims asserted against the Secretary of Agriculture or the Department of Agriculture. As a result, the United States is the only proper defendant in this action. *See Arias v. United States*, No. 13 Civ. 8542, 2014 WL 5004409, at *14 (S.D.N.Y. Sept. 29, 2014) ("The United States has not waived the defense of sovereign immunity with respect to claims brought against the USDA, FNS or its officials under the FSA. The FSA provides for suits only against

the United States; therefore, the only proper defendant in this case is the United States." (internal quotation marks and citation omitted)).

Accordingly, Defendants' motion for summary judgment on the claims against Secretary Perdue and the Department of Agriculture is GRANTED.

II.     Legal Standards

        A.     Summary Judgment

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Feingold v. New York,* 366 F.3d 138, 148 (2d Cir. 2004).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v.. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Material facts are those which, under governing law, may affect the outcome of a case.  *Id.*

The moving party initially bears the burden of informing the court of the absence of a genuine dispute of material fact by citing to particular evidence in the record.  Fed. R. Civ. P. 56(a), (c); *Celotex,* 477 U.S. at 322–25; *Koch v. Town of Brattleboro,* 287 F.3d 162, 165 (2d Cir. 2002). The movant may satisfy its burden by "showing that the materials cited do not establish the . . . presence of a genuine dispute."  Fed. R. Civ. P. 56(c)(1)(B).  If the non-moving party has the burden of proof on specific issues, the movant may also satisfy its initial burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact.  *Celotex,* 477 U.S. at 322–23; *PepsiCo Inc. v. Coca-Cola Co.,* 315 F.3d 101, 105 (2d Cir. 2002).  In deciding the motion, the court views the record in the light most favorable to the nonmoving party.  *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 61 (2d Cir. 2002).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of fact. *Beard v. Banks,* 548 U.S. 521, 529 (2006); *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir. 2001). The opposing party may not avoid summary judgment by relying solely on conclusory allegations or denials that are unsupported by facts. *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.,* 302 F.3d 83, 91 (2d Cir. 2002). Instead, the opposing party must set forth "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324 (internal quotation marks omitted).

B.     SNAP Disqualification

"Judicial review of a decision by the FNS disqualifying a firm from participation in SNAP as the result of a trafficking violation is a two-step process." *Muazeb v. United States*, No. 17 Civ. 6754, 2019 WL 1613433, at *7 (S.D.N.Y. Mar. 28, 2019) (internal quotation marks and citation omitted). First, the court must determine *de novo* whether a trafficking violation warranting disqualification actually occurred. *Id.*; *see also* 7 U.S.C. § 2023(a)(15). Plaintiffs, as the parties challenging their permanent disqualification from SNAP, bear the burden of proving by a preponderance of the evidence that the agency's action was "invalid." *Arias v. United States*, No. 13 Civ. 8542, 2014 WL 5004409, at *6 (S.D.N.Y. Sept. 29, 2014) (collecting cases); *see also Duchimaza v. United States,* 211 F. Supp. 3d 421, 428 (D. Conn. 2016) (noting that, although the Second Circuit has yet to address this issue, district courts within this circuit and other courts of appeals have held that plaintiffs bear the burden of proving by a preponderance of the evidence that the disqualification was invalid). To meet this burden, the plaintiff must demonstrate that "*each* cited instance of trafficking" was invalid, as the FNS may permanently disqualify a participant even after just one instance of trafficking. *S.S. Grocery, Inc. v. U.S. Dep't of Agriculture, Food and Nutrition Service,* 340 F. Supp. 3d 172, 180 (E.D.N.Y. Sept. 11,

2018) (emphasis added). As its review is *de novo,* the court must "reexamine the agency's decision on a fresh record, rather than determining whether the administrative decision was supported by substantial evidence." *Ibrahim v. U.S. Through Dep't of Agric.*, 834 F.2d 52, 53 (2d Cir. 1987). Further, the court "must reach its own factual and legal conclusions based on a preponderance of the evidence, and should not limit its considerations to matters previously appraised in the administrative proceedings." *Id.* at 53–54 (internal quotation marks and citation omitted).

If the court finds that a violation has occurred, then the second stage of review requires the court to determine whether the sanction imposed was "arbitrary or capricious, *i.e.*, whether it was unwarranted in law without justification in fact." *Willy's Grocery v. United States,* 656 F.2d 24, 26 (2d Cir. 1981) (internal quotation marks and citation omitted). "Whether the imposition of a penalty by the FNS was arbitrary or capricious is a matter of law appropriately determined on a motion for summary judgment." *Guzman v. United States Dep't of Agric. Food & Nutrition Serv.*, 931 F. Supp. 2d 488, 494 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). The "arbitrary or capricious" standard requires that an agency's decision be given substantial deference. *See Arias,* 2014 WL 5004409, at *11. The court may not substitute its judgment for that of the agency. *Id.* (citing *Friends of the Ompompanoosuc v. Fed. Energy Regulatory Comm'n,* 968 F.2d 1549, 1554 (2d Cir. 1992) (internal quotation marks and citation omitted)). Rather, the court may find that FNS has acted arbitrarily or capriciously only if it has imposed a sanction not in accordance with its own regulations and procedures. *See Willy's Grocery,* 656 F.2d at 26; *Yafaie v. United States*, No. 94 Civ. 7825, 1995 WL 422169, at *1 (S.D.N.Y. July 18, 1995) ("If the penalty imposed is in accordance with the settled policy of the FNS, it is not arbitrary or capricious.").

III.    <u>Analysis</u>

A.    Existence of a Violation

FNS determined that Plaintiffs had violated SNAP regulations on the basis of three patterns it identified in LF Food Market's EBT transaction data between December 2016 and May 2017:  (1) 1,006 transactions that ended in either zero cents or 50 cents, out of a total of 1,862 SNAP transactions in excess of $9.00; (2) 14 households that engaged in sets of repeated SNAP transactions that totaled more than $100.00 within a 24-hour period; and (3) 123 transactions in excess of $35.00, 11 of which also exceeded $100.00 and ended in a same-cent value.  Def. Mem. at 11–13, ECF No. 49.

Plaintiffs argue that they are not required to produce direct evidence showing that each transaction identified by FNS was legitimate, because FNS's trafficking determination was based on the *pattern* of transactions at LF Food Market, rather than any particular transaction.  Pl. Opp. at 5–6, ECF No. 57.  Federal statute expressly authorizes "the suspension or disqualification of and the assessment of a civil penalty against a retail food store . . . on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data*, or evidence obtained through a transaction report under an electronic benefit transfer system.*"  7 U.S.C. § 2021(a)(2) (emphasis added).  Consequently, a pattern of suspicious transactions can be sufficient evidence for FNS's disqualification determination to be valid.  *See Nadia Int'l Mkt. v. United States*, 689 F. App'x 30, 33 (2d Cir. 2017) ("[I]t was entirely proper for FNS to rely on transaction data alone in making its trafficking determination."); *Sky Grocery, LLC v. United States Dep't of Agric.-Food & Nutrition Serv.*, No. 15 Civ. 1082, 2017 WL 1054484, at *8 (D. Conn. Mar. 20, 2017) ("In this Circuit, district courts have granted summary judgment on the basis of EBT data.").

To defeat a disqualification based on pattern evidence, Plaintiffs must show that the EBT data FNS relied on could not justify a finding of trafficking in any instance. Plaintiffs are correct in saying that they need not produce records of each transaction to clear that hurdle. But Plaintiffs do bear the burden of showing that "each cited instance of trafficking" was not validly deemed so. *SS Grocery*, 340 F. Supp. 3d at 180. Thus, to survive summary judgment, they must produce evidence sufficient to show that the patterns identified by FNS fails to establish that *any* transaction was illegitimate.

For each category of transaction, Plaintiffs have failed to carry that burden.

### 1. Same Cent Transactions

FNS determined that the 1,006 transactions that end in zero or 50 cents are indicative of trafficking because most prices at LF Food Market ended in 99 cents. Def. Mem. at 11–12; *see* A.R. 128–146 Thus, payments ending in round numbers suggest that customers are paying for something other than the market's products. Plaintiffs assert that many transactions ended in round numbers for a different reason: "When customers in this area are given the sales price of the purchased items . . . they refuse to pay the tax and [would] rather not purchase the goods. This behavior has compelled the store owner to include the tax in the sale price[,] which creates transactions ending in the same cents value." Pl. Opp. at 7. But Plaintiffs have not produced any evidence to support that assertion. To the contrary, Israel Arenas, LF Food Market's store manager during the relevant period, testified in his deposition that sales tax was included in the sticker price of the goods sold there, and that even with sales tax included "most of [the prices] did not end in an even price. They would have 99. 99 or something like that, 9.99." Arenas Dep. 15:3–16:22, ECF No. 59-1.

Plaintiffs also suggest that customers often rounded out their purchases by buying small items, and Arenas did testify that customers would often buy five- or ten-cent products like pieces of candy. Pl. Opp. at 7; Arenas Dep. at 46:17–50:9. Arenas also testified, however, that customers generally engaged in such rounding out "so they don't have to deal with the cents." Arenas Dep. at 50:8–9. Cash transactions would not be part of the EBT data collected by FNS. In any event, customers' occasional purchase of candy or other low-price goods does not explain the volume of purchases ending in zero or 50 cents. It is not plausible that customers decided to round out their purchase in 1,006 out of 1,862 transactions of more than $9.00—in other words, more than half the time.

## 2. Repeat Purchases

The most compelling evidence against Plaintiffs is the sets of repeat transactions totaling more than $100 each identified by FNS. FNS asserts that repeat transactions within a 24-hour period, like those here, are a common tactic by stores trafficking in food stamps to hide their tracks. Def. Mem. at 12; 56.1 Stmt. ¶ 14. And FNS argues that such transactions are not plausibly legitimate given LF Food Market's relatively limited offerings. Def. Mem. at 12. Plaintiffs seek to explain these transactions in two ways: first, by asserting that LF Food Market serves a community with large families, multiple members of which come into the market to make purchases; and second, by asserting that LF Food Market allows trustworthy customers to buy on credit, and so what appear to be two transactions in short order are in fact one transaction settling the customer's tab, and one new set of purchases. Pl. Opp. at 8. The former explanation might explain some of the repeat transactions identified by FNS. The data presented shows that some sets of purchases were made with hours between them, and were not in implausibly large amounts. *See* A.R. 147–148. Moreover, Arenas testified that customers would often spend

larger sums on days when their EBT cards had been loaded with fresh benefits, and that families would sometimes make repeat purchases in short order. Arenas Dep. 44:20–45:14, 51:4–20.

But purchases by multiple family members cannot plausibly explain the transactions that involved larger sums of money and occurred within a shorter period of time. FNS identified situations where a household made a purchase for $75.00 at 3:18 p.m., and then another purchase for $74.99 at 3:19 p.m.; where a household made a $100.00 purchase at 9:18 p.m and a $105.00 purchase at 9:43 p.m.; and where a household made a $75.00, a $30.00, and a $45.00 purchase all within a 33 minutes of each other, starting at 9:41 p.m.. A.R. 147. Such transactions are not consistent with multiple family members seeking to buy different products. And the explanation that these transactions reflect purchasing on credit is not supported by evidence. Arenas testified, and Plaintiffs admit, that LF Food Market allowed only one customer to accumulate significant credit balances, and that when other customers were allowed to buy on credit, it was generally for small purchases that the customers were expected to pay for within the next day or two. Arenas Dep. 56:19–59:24; 56.1 Stmt. ¶ 24. In any event, Plaintiffs have not put forward any explanation as to how purchases on credit could explain the rapid-fire transactions identified by FNS—most obviously, the transaction where a customer paid $75.00 twice within one minute.

### 3. Large Payments

Finally, FNS determined that 123 transactions at LF Food Market that exceeded $35.00 in price were indicative of trafficking, because the average convenience-store purchase in New York City totals $8.95. Def. Mem. at 12; *see* A.R. 149–151. Standing alone, this evidence is fairly unpersuasive. FNS does not assert that 123 purchases in excess of $35.00 over six months is an unusually high frequency for such purchases, but even assuming it were, there are myriad

innocent factors that could explain those transactions. *See* Arenas Dep. 44:20–45:14 (testifying that customers frequently paid for bulk food purchases with EBT). But some of the larger purchases identified by FNS are not so easily explained, particularly because they are suspicious in other ways. FNS identified 11 transactions that were greater than $100.00 *and* ended in zero cents. Def. Mem. at 12–13; A.R. 98. There are also a significant number of transactions that are close to $100.00 and end in zero cents. *See* A.R. 98. These larger transactions, that also bear other hallmarks of trafficking, require some explanation by Plaintiffs. But Plaintiffs do not provide any.

Plaintiffs have failed to produce evidence capable of invalidating that FNS's determination that at least some same-cent, repeat, and large transactions were illegitimate trafficking.[3] Accordingly, Defendants' motion for summary judgment on Plaintiffs' challenge to FNS's trafficking determination is GRANTED.

### B. Appropriateness of Disqualification

Plaintiffs challenge FNS's decision to permanently disqualify them from SNAP on the basis of the violations it found. Pl. Opp. 11–14. In support of their challenge, Plaintiffs largely reiterate the assertion that they are not guilty of trafficking. *Id.* at 13–14. To the extent that they advance an argument beyond what the Court has already rejected, it is that "the sanction of permanent disqualification is simply far [too] disproportionate . . . ." *Id.* at 13.

The uncontested evidence produced by FNS, however, shows that the sanction of permanent disqualification was required under the circumstances. Def. Mem. at 16–18. FNS

---

[3] Plaintiffs argue that FNS's decision deprived them of due process because there are no Department of Agriculture rules expressly prohibiting "rounding off purchases so that they end in same cent[] values, allowing benefit card holders to purchase items more than one time within 24 hours[,] or a dollar limit." Pl. Opp. at 13. This argument misses the mark, because FNS did not penalize Plaintiffs for any of those legitimate behaviors. Rather, on the basis of an unusual frequency of large, same-cent, and back-to-back transactions, FNS determined that Plaintiffs were not engaged in legitimate sales of SNAP-eligible foodstuffs, but were instead engaging in trafficking.

regulations provide that a monetary sanction is available in lieu of disqualification only "if the firm timely submits to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations of the [p]rogram." 7 C.F.R. § 278.6(i). The administrative record reveals that Plaintiffs did not submit any evidence to that effect. *See* A.R. 154 (Plaintiffs submitted no response to the Charge Letter); 169–245 (challenge to disqualification decision contained no evidence of a policy to prevent violations). And Plaintiffs admit that they did not have a written policy concerning the use of food stamps, or provide any written material to employees regarding food stamp rules. 56.1 Stmt. ¶¶ 26–27.

FNS's decision not to impose a monetary sanction in lieu of disqualification was, therefore, entirely consistent with its settled policy. The Court, therefore cannot overturn it as arbitrary and capricious. *See Willy's Grocery,* 656 F.2d at 26 (holding that FNS's choice of sanction was not arbitrary and capricious because "the agency properly applied its own regulations and guidelines to the food stamp violations committed").

Accordingly, Defendants' motion for summary judgment on Plaintiffs' challenge to the imposition of permanent disqualification as a sanction is GRANTED.

### C.    Other Claims

Finally, FNS moves for summary judgment on the remaining claims in Plaintiffs' complaint. The complaint claims that FNS violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, Compl. ¶¶ 35–38, and that the regulations concerning when civil monetary penalties are permitted "contravene the express intent of Congress" and "violate the Due Process Clause of the Fifth Amendment," Compl. ¶ 42. FNS disputes each of these claims. FNS argues that the APA is inapplicable because federal law provides an express means to

challenge disqualification decisions, 7 U.S.C. § 2023, and the APA applies only when no adequate alternative exists. Def. Mem. at 18; *see Al Amin Halal Meat & Fish Mkt. Inc. v. United States*, No. 15 Civ. 276A, 2015 WL 12552019, at *15 (W.D.N.Y. Oct. 21, 2015) ("The more general Administrative Procedure Act does not override the express language of the applicable Food Stamp Act."), *report and recommendation adopted*, No. 15 Civ. 276A, 2015 WL 12552031 (W.D.N.Y. Dec. 7, 2015). And FNS argues that the regulation establishing eligibility criteria for a party to pay a monetary penalty in lieu of disqualification is entirely consistent with both the governing statute and the Due Process Clause. FNS points out that the Food Stamp Act expressly grants the Secretary of Agriculture "discretion to impose a civil penalty . . . in lieu of disqualification . . . if the Secretary determines that there is substantial evidence that such store or food concern had an effective policy and program in effect to prevent violations of the chapter and the regulations." 7 U.S.C. § 2021. And FNS contends that the Due Process Clause is satisfied in its substantive aspect so long as the regulations have a rational basis, and in its procedural aspect by the opportunity for *de novo* review of FNS's decisions in district court. Pl. Opp. at 19–20; *see Muazeb*, 2019 WL 1613433, at *12 (rejecting procedural and substantive due process challenges to disqualification decision).

Plaintiffs' opposition brief does not respond to FNS's arguments on these issues. On a motion for summary judgment, "in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014). The Court finds that Plaintiffs' failure to contest their APA claim and challenge to the validity of FNS's regulations concerning monetary penalties constitutes abandonment of those claims.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' APA claim and challenge to the validity of FNS regulations is GRANTED.

## CONCLUSION

Plaintiffs have not adduced evidence that would allow a jury to conclude that FNS's determination that they engaged in trafficking of SNAP benefits was invalid. Plaintiffs also have not presented evidence showing that they should have been afforded the opportunity to pay a monetary penalty instead of being disqualified from SNAP. And Plaintiffs have abandoned their APA and regulatory claims.

Defendants' motion for summary judgment is, therefore, GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 48, and close the case.

SO ORDERED.

Dated: March 4, 2020
       New York, New York

_____
ANALISA TORRES
United States District Judge